Our final case for oral argument this morning is United States v. Amador-Flores, 17-2056. May it please the Court, Howard Pincus from the Federal Public Defender, and I represent Javier Amador-Flores. Although he was not offered or qualified as an expert, Agent Robles gave testimony that only an expert can give. He told the jury that what Mr. Amador-Flores said happened was not consistent with what he had seen in other drug cases. In what the District Court recognized was not a strong case, this Court should reverse Mr. Amador-Flores' conviction for plain error. Agent Robles drew a direct comparison to other drug cases that he had investigated. Mr. Amador-Flores said that when Paeza asked him to do a drug deal, if Mr. Dominguez-Morales was not back, he turned him down. Agent Robles said that this was not consistent with what typically happened in the 50 or so drug cases that he investigated, and that typically there is such an offer only if the drug trafficker has dealt with the person before in a drug-related context. This is not a lay testimony, this is not testimony that a lay witness could give. Under James River, this Court's decision in James River, knowledge derived from prior professional experience falls squarely within the expert testimony rule, and so outside of the lay testimony rule. As Judge Hart said in his concurrence in Brearley, an opinion based on police training and investigation falls squarely within James River. So Mr. Agent Robles' comparison with what happened in other cases, in the 50 or so other cases he investigated, was not something a lay witness could testify to. No lay witness could make that comparison. Only somebody with prior professional experience, like Agent Robles, could do that. The government, in a 28J letter, has cited to a couple of other cases, Keel and Von Willey, I believe, from the Ninth Circuit, and those cases actually, given the state of law in this circuit, show the correctness of Mr. Amador-Flores' position. In United States v. Sturmowski, 971 F. 2nd 452, and I'll either read it out or I'll just read it out, and respond to the government's 28J letter, which was filed a couple days ago, or submit my own, this Court said that testimony about guns being a tool of the trade in drug trafficking was expert testimony. And that's precisely the kind of testimony we have here. We have... The kin of a layman, isn't that what we do? No, because Agent Robles didn't say, based on what he had seen in this case, whether something made sense or not, that actually wouldn't be admissible testimony of any kind, because it wouldn't be helpful to the jury. But certainly he couldn't compare this to other cases. Let me put it in this context. Why does this have to be so unique to the drug trade? Why can't it just apply into business, that you wouldn't trust somebody in a transaction of significance, if you hadn't tested them before? Well, again, that's not what he said. What he said is he's comparing this explicitly to 50 other drug cases, and what he's seen in all of those other drug cases, he's drawing a conclusion about what drug traffickers do, based on what he had seen. He wasn't giving his own personal opinion. He was saying, my professional experience tells me this. In addition, what he was doing... But we don't judge it necessarily by what he prefaced that on, don't we? We just judge it by, you know, is this a common-sense conclusion that a juror could draw, or that a layperson could draw? No, I think the fact that he does make this comparison makes it something that any juror could not, a layperson could not do. No layperson could make that comparison, and it also showed it was derived from his professional experience. But trustworthiness, we're talking about trustworthiness. You know, are you going to trust him in one transaction if you hadn't trusted him in a similar transaction before? Well, but remember what he's rebutting as well, right? Mr. Amador Flores has a friendship with Paeza. He's washed after his horses. Paeza comes and visits him. What the agent's testimony is effectively saying is drug traffickers don't trust people they haven't done a major drug deal with, or to do a major drug deal that they haven't dealt with in the drug context. And that, inferentially, what he's saying is friendship alone wouldn't do it, which was Mr. Amador Flores' defense, that he was asked to do this, and he turned him down. He said, I had no knowledge of this, I didn't do this, I wasn't involved in this conspiracy. This was a rebuttal to his testimony based on what, or his statement, based on what the agent had seen in other drug cases. And it falls squarely within James River, as Judge Hart said in Brearley. And it doesn't actually matter whether other circuits treat it differently. What matters under cases like Wolfname is what this circuit's law is. And this circuit's law says if what you're testifying to is derived from your own professional experience, and it explicitly was here, then it is expert testimony and not lay testimony. It's the same with Agent Robles' testimony about the wiring of the money from that Mr. Amador Flores, when he sent money to Paisa. Mr. Amador Flores said it was because of a, from a sale of a saddle. The agent said that this was not typical of what would happen in drug cases. And he explained why. So, again, this is a rebuttal to Mr. Amador Flores' statement based on what the agent had derived from his experience in other cases. And under this circuit's precedent, it was derived from his prior professional experience. It's expert testimony. It can't be admitted through a lay witness for whom no notice was given and for whom no reliability determination was given. It's made. Why were those, why was that testimony particularly prejudicial in light of the other evidence that was submitted? Well, it was particularly prejudicial for a couple of reasons. One is how important it was to Mr. Amador Flores' defense. He's saying that other people said, or at least one other person, Dominguez Morales' girlfriend, was saying that he was offered to do this drug deal. He's denying it. Okay? That is critical to his defense. And the key part here is that the district court said that this was not a strong case in, even in a sufficiency context, when it denied the Rule 29 motion. And it said to the prosecutor, you've got a lot of work to do in your summation. So we have the district court on the spot giving its assessment of the case based on the witnesses it saw, which this is a case that this court doesn't have the benefit of, and the district court didn't think it was a strong case. In fact, Mr. Amador Flores was not involved in the actual transfer. He was not on any of the recorded calls. There's no evidence that he had any prior drug dealings with Paisa or Dominguez Morales. The drugs that were found on his property were either small amounts of methamphetamine, or they were found in the truck. The one pound of meth and paraphernalia was found in the truck that belonged to his girlfriend, who was a meth user, and who was involved in the actual transfer. If anything, it was connected to her and not to him. The government relied heavily on a stockyard receipt that was in the Monte Carlo in which the drugs were transported to the property. But that receipt was from 21 months ago. There's no indication that it had anything to do with the charge conspiracy or showed him to be in the Monte Carlo anywhere close to the charge conspiracy, which was only six days. But what it went to was that he said he was never in the Monte Carlo, right? And he may have misremembered. This showed at one time maybe he was in there at best. And again, we're not, of course, on sufficiency here. We're talking about the strength of the evidence. There's nothing in that receipt that connects him to the Monte Carlo anywhere close in time to the charge conspiracy. The most likely time when that was left in the Monte Carlo would have been 21 months ago when the receipt was issued, and it was from the stockyards, could well have been for a saddle, as Mr. Amador Flores said. He can't be convicted based on, or certainly not strong evidence, based on his failure to remember that he may have been in a Monte Carlo almost two years before the charge conspiracy. There was no objection at trial to this evidence, right? That's correct, Your Honor. So we're looking at it under plain error. Yes. Okay, so you are arguing not only that it's error, but also that it should have been plain to the district court. Correct. And it's plain based on this Court's precedence. It's plain based on James River that this is derived from his professional experience. It's plain from what Judge Hartz said very clearly in Brearley in his concurrence, that your opinion based on testimony, based on training and experience with 100 other cases, fits exactly within James River. It's clear from Stermowski, which says guns and drugs, guns being tools of the drug trade, is expert testimony. This seems less obvious than that drug dealers use guns. How, you know, whether somebody would trust a friend who they had dealt with to do a drug deal, as opposed to guns being commonly involved in drugs. But yet this Court in Stermowski said that, because it's based on the agent's experience, is the kind of testimony that is expert testimony, and it can't be offered through a lay witness. On the issue of plainness, does it matter? I understand there was some comment by the district court about whether or not the door was opened. Doesn't that, isn't that implanted or embedded in the plainness issue? If you look at that colloquy, it's not talking about what the government says it is in terms of opening the door. And there was nothing here. Mr. Amador-Flores' denial of being involved in, or eliciting on testimony that he had denied being involved in drug trafficking, doesn't open the door to inadmissible testimony or expert testimony on that topic. There's nothing improper about what Mr. Amador-Flores did. And the opening the door concept applies to allow the government to respond to evidence that wouldn't otherwise be admissible. What Mr. Amador-Flores brought out through the officer was that his statements, in his statements he denied being a drug dealer, that they hadn't investigated, things like that. That's got nothing that doesn't allow an improper expert opinion. If the government had wanted to introduce this as expert testimony, they easily could have. So they brought in So that's how you get to the point. It's not part of the plainness analysis, because if it was air, it was air. That does not mean it became something other than air just because the door was opened. Well, the door wasn't open. There was nothing impermissible about the questioning by Mr. Amador-Flores. It didn't allow the government to respond. I'm not saying it was impermissible. It's not impermissible to open the door. But you have to open the door to testimony that would otherwise, I mean, the notion of opening the door does require that you've explored something that makes something else relevant. And here this was, what he did was perfectly permissible. He just denied it. That's what his conduct was like. That's what he was talking about. No, he was saying I wasn't involved in drug dealing. And what the government responded with was a comparison of whether his statement made sense in light of other investigations. That's not permissible. There's nothing that's not an appropriate response to what Mr. Amador-Flores questioned. So if there had been an objection at trial, could this evidence have just been brought in under Agent Montoya? No, because they did not give notice that Agent Montoya would have testified to this. They had an expert disclosure for Agent Montoya, but this wasn't part of it. And that's my point. If the government had wanted to get this evidence in, it is expert testimony, they should have put it in a notice of some witness, properly qualified him as an expert, and they didn't do that. And in what the district court recognized was a close case, a weak case, something that goes directly to Mr. Amador-Flores' denial of being a participant in drug trafficking. Both of these issues, both of these examples of improper expert testimony do that, was necessarily prejudicial. Isn't it relevant on the fourth prong, and that is, okay, so they couldn't get it in in this trial. But if we would reverse and send it back, all they're going to do is get one of the experts qualified to put this in. And so doesn't that reflect upon the fourth prong of plain error? No, this court has never looked at the fourth prong that way. We have to look at what the trial would have looked like without this testimony. It's pure speculation as to what would happen. We don't know that the district court That's the third prong. The fourth prong is much broader. It's the public reputation and the fairness, and is something going to be different if it's retried? Well, no, whether the outcome would have been different is the third prong. There's two main reasons why the fourth prong is met. One is the importance of this interest under the 2000 amendments to the federal rules of evidence. Another is this court's decision in Hill, which talks about the credibility of witnesses to be something that's exclusively a jury function. And we don't know Hill's kind of unique. I mean, the agent testified that he was a human lie detector, basically. Hill was more extreme than this case. That's true. But going back to Judge Murphy's question, we don't know what would happen on remit. And it's possible that the district court would relieve them from their failure to give a proper disclosure. But it's also possible that we don't know whether the witness would either, Agent Robles or Agent Montoya, would be qualified to give this testimony. We just don't know. And this court shouldn't look to speculation in deciding the fourth prong. So we'd ask the court to vacate the conviction and remand for a new trial. Good afternoon, Brock Taylor. I represent the United States. So we're here on plain error. I think the bottom line is that reasonable jurists can debate and spill a lot of ink about the first prong in this case. But because you can do that, he loses on the second, third and fourth prongs fairly easily. And so I think this is a fairly straightforward case. The evidence in the case is not weak. I think the word the judge wanted to use was circumstantial evidence. This was a circumstantial case. It was based on circumstantial evidence. The jury went out at 939 and came back with a verdict at 1153. They didn't stick around for lunch. It was a straightforward, quick verdict from the jury. The question on what would have happened if he had objected. And this goes to the reason for plain error review. So what happens if he objects? Rule 16, and this is what he's complaining about. Essentially, this is a Rule 16 notice. Rule 16 has a remedy in it for these types of things when they are objected to. If a party fails to comply, the district court may order sanctions, including issuance of an order. It can grant a continuance. It can exclude the undisclosed evidence. It can do anything that it wants to as long as it's fair and just. Under IV, the court has to impose the least severe sanction that will accomplish the ends of its goal. So if he objects, the government can say, OK, we'll just wait until we get to Agent Montoya to ask those questions. If we assume it's expert testimony, which we don't concede that. If you look at the government's disclosure of expert witness testimony, page 35, we include the manner in which individuals, organizations package, conceal, transport and distribute methamphetamine. Agent Montoya testified, this is in the record at 427, about the way that drug trafficking organizations move money and talk about money. If you look at the actual statements themselves, I can come up here and say, in my training experience, the sky is blue. That doesn't make that expert opinion testimony. I can come up here and say, in my professional experience, I know that judges wear black robes and they're remarkably good looking compared to normal people. That may be in my professional experience, but a normal person can come in and make the same observation and provide the same type of opinion. Just because those words are used doesn't make it expert opinion testimony. If you actually look at the actual statements, record at 234, did you find it, question, did you find it consistent, his statement about the May 4th call from PISA offering him, you know, 2,000 to, you know, do the deal in place of Joel Dominguez Morales, did you find that to be consistent with what you typically see in these types of investigations for someone who is never involved in drug trafficking? Answer no. And could you explain why? Answer yes. You know, typically when a drug coordinator or a drug trafficker, when he's looking for, whether it be a driver or couriers, if he goes to them for that, it's more likely that because he's used them before, especially if dealt with on a regular basis. First, that's fairly convoluted testimony. Second, that is obvious. Everyone knows that drug traffickers don't go to church picnics and randomly ask people to do $104,000 drug transactions. But this isn't a stranger at a church picnic. I mean, this is somebody that they know, that he knows really well. So this is someone that he knows really well, but the point that he knows him really well goes to the fact of guilt. This gentleman, Mr. Amador Flores' home is the mothership of this drug trafficking organization. Yet no drugs were found in his home. So what is found? Drugs are found at three locations on his property, two different sheds and a vehicle. The vehicle also has dimethyl sulfone, which is the cutting agent that's used for this eight pounds of methamphetamine. And we know his girlfriend was involved. We know his girlfriend was involved. We also know his girlfriend used his truck to go to the drug trafficking event. He had to get a ride to work because she was using his truck for it. We also know that he's in the room while she's counting $14,000 and that he tells the cooperating witness that he can't go to the Mexican rodeo because he has to make a deposit on the same day. The clear inference is he's making that deposit for $14,000 of drug proceeds. That's, you know, the point is he's involved. And his relationship to Paisa and his relationship to Joel Dominguez-Morales and his relationship to everyone else in this drug trafficking organization is an important fact that shows... that he didn't get involved. And if you have the officer testify, certainly that gives more meaning to the statement than if you just had a layperson testify, particularly when he says, based on all my experience with drug trafficking, this is my opinion. And I think the answer to that is you look at the expert's testimony in the case, and the testimony is always the same in these drug trafficking cases, that drug trafficking organizations operate as businesses. And because people have knowledge of what is common in a business situation, there's a blurry line between where are we getting into expert testimony, where are we still in lay testimony. But the idea that he would randomly come up to a friend who has repeatedly told him, no, no, no, I don't want to be involved in drug trafficking. The day before, this is an eight pound, this is big enough that they bring a helicopter to do the surveillance. It's a big drug transaction. The weight that gets put on that is not over the top. And second, I would point out that the fact that it comes in through arguably a lay witness, we can bring that testimony in through our expert witness, Montoya, under our notice. But you can only do it upon retrial. So had he objected, and that's the point of plenary review is to encourage him to object. Had he objected and the court said, whoa, yeah, you didn't notice him up as an expert, that would be expert testimony. Under our notice, we can then bring that testimony in through Agent Montoya. And so you go to the third and fourth prong, arguably the government is shooting us. But pre-trial you had to list what Montoya was going to testify, generally, what he was going to testify to, right? And we did. Do you indicate that he would testify as Robles did? So this is the record at 35. We said he would testify about the manner in which individuals and organizations package, conceal, transport, and distribute methamphetamine. And so saying that someone uses someone that he's dealt with before to distribute methamphetamine, I think that's well within our notice. Manner in which they package and distribute? Package, distribute, conceal, and distribute. And so that includes things like who are the type of people that they use to distribute. And they tend to use people who are their associates and who have worked with them in the past. Well, I'm not sure this advances the analysis, but the question that occurs to me, why didn't you put it in through Montoya? So trials are trials, right? So things happen during trials that sometimes aren't necessarily the best way. Oops, I forgot to ask Montoya, so I'm going to ask Robles. But the point is, would it have affected the outcome of the trial? And if we ask it through Montoya, then we have the provenance of an expert, which arguably makes the testimony more powerful. And if we go back on a remand, the question will be asked again. It will be asked of the expert, which he can't win on those prompts. You tend to be bordering in the area of speculation, which we're not supposed to do about that. And that is whether the judge would allow you to ask Montoya that, given the outline of what you said Montoya would testify to. So I don't think there's any question he would have allowed Agent Montoya to testify to that under the notice that we had provided. And secondly, if he had objected to it, at least we could have made that argument. The third thing that the court can do, because the court has this gatekeeping role, is it can, I mean, the court is able to voir dire Agent Robles and declare him an expert on the spot. What he's arguing is that, oh, you've made this Rule 16 notice error, and the courts have broad discretion, like the district court has broad discretion on how it wants to deal with Rule 16. The court has the ability on the spot to voir dire and declare him an expert without any kind of notice at all. That's within the court's discretion, and he's required to do the least. Even with the evidence in, the court had some serious doubts as to the weight of the evidence here. So, I mean, I remember being there, and it was not a weak case. I mean, we can talk, it was a circumstantial case. But didn't the district court disagree with you on that? Didn't the district court say it was not the strongest case they've ever seen? So whether or not it was the strongest case they'd ever seen or not, the standard was did we prove it beyond a reasonable doubt, and we did. And would we have proven it beyond a reasonable doubt without this testimony? Yes, we would have. It wasn't a particularly important testimony to the case. It was the type of thing that we can bring in through argument without even having the testimony. If you look at the strength of the evidence, you know, this house, Javier Amador Flores' house is the mothership of this organization. Like I said, they have, he says, oh, they only have 70 grams of meth at the house and only a pound of dimethyl sulfone at the house. That's because they've just shipped, you know, eight pounds of meth. But, Mr. Taylor, that's your perspective. The best perspective here is the person who is neutral who is looking and watching this trial. And that person said even under the lenient sufficiency test that that was not an easy call in this case. So with respect, the best person to determine were the 12 jurors. And they found that he was, in fact, guilty. And even the judge himself, like he didn't, he didn't, I mean, he didn't rule against the government. That suggests to me that you never have a sufficiency issue as long as you have a jury verdict. So, you know, we're here on plain error. We're not here on sufficiency. The question is, you know, whether or not. Well, no, but the weight of your case reflects upon plain error, doesn't it? So let's, I mean, let's talk about the weight of the case. So the weight. That's exactly what we've been talking about. Amador Flores manages to convict himself with his own statements. So we have him saying that, you know, there's these two guys I know. I know they're both drug traffickers. I know they move drugs a lot. He says that, you know, they've offered me, they told me to sell ounce quantities for $1,200 an ounce. You know, he's getting specific detail from these people on what they want him to do. He states that they ask him for permission to leave the white car at his house. That car has trap doors in it. We know he's been in that vehicle because of the receipt in it. They state that they ask him to store something at his house. And he says he thought it was drugs. That's his statement, that he thought it was drugs. He stated that he received a call from PICE on May 4th offering him to do the eight-pound drug transaction for $2,000. Then we have testimony from Cardoza-Burciaga, who knows nothing about what Amador Flores has said, that on May 4th she sees him and Myrna Orozco, you know, counting money in their room, that he then says, I have to make this deposit and can't go to this thing. And then, she says, he starts asking her about this white car and asks for the keys to the white car. He then says, he overhears him say, if Poyal Dominguez-Morales doesn't get back, I'm going to have to do the gig. He also, you know, he says, I've transferred money to Mexico on behalf of PISA. He says, you know, I've sold two vehicles to PISA, suspecting that they were going to be used for drug trafficking. The idea that this is a weak case, I just frankly disagree with that assessment. That's circumstantial evidence and it builds on each other. Those are his statements. They're tantamount to a confession. Yeah. And if you have any other questions, I'm happy to stop if you want me to stop. Thank you, counsel. Thank you. Counsel are excused and the case is submitted.